## PETER R. ROACH *v.* FREDERICK A. COE.

The defendant, having ratified a purchase of land made in his name, but without his previous authority, by a broker, directed him to offer the land for sale, and agreed to allow him one third of the profits resulting therefrom, all propositions to purchase to be submitted for the defendant's approval before acted upon. The plaintiff proposed to purchase upon conditions, of which the defendant signified to the broker his acceptance. The broker then executed, in the defendant's name, a contract of sale to the plaintiff, mainly omitting, however, the conditions aforesaid *Held,* that the defendant was not bound to a specific performance of this contract, until the plaintiff complied with the terms which had previously been communicated to and accepted by the defendant.

A broker, under such an arrangement with his principal, is not authorized to make, in his name, a contract for the sale of the land.

A payment by the plaintiff to the broker on account of the contract, and the payment of the money by the broker to the defendant, was not a ratification thereof, it appearing that the broker, as the agent of the defendant in other transactions, was in the habit of paying him money, and that *this* money was received by the defendant's clerk and paid out for the defendant's benefit, without any knowledge or notice to the defendant upon what account the money had been paid; and that, as soon as the defendant knew it, he returned an equal sum, and disavowed the contract.

A principal should not be held to have ratified a contract made by an agent, unless it appear that he knew the terms thereof, and that acts, from which a ratification is to be inferred, related to the performance of such contract.

THIS was an action to compel specific performance of an agreement for the sale to the plaintiff of land in the city of New York, made by a third person as agent of the defendant.

A broker, attending an executor's sale of land, purchased five lots in the name of the defendant, considering that at the price at which they sold, the defendant would probably like to take them. The defendant ratified the purchase, paid auction fees and ten per cent. upon the consideration money, and agreed to allow the broker one third of the profits resulting from a resale.

The broker, having been requested to sell the lots, received an offer from the plaintiff, which he communicated to the defendant, and thereupon, the firm, of which the defendant was a partner, sent him the following letter:—

                                "52 *John street, February* 29.
"F. A. GUION, Esq.

"Dear Sir:—We consent that Mr. Roach take the five westernmost lots, at the price agreed upon, he assigning to us the bonds and mortgages, and paying us the difference in cash to-day; and we will enter into an agreement with him to let him take the lots, provided, on investigation of the title to the mortgaged premises, they be free from incumbrances prior to their date. The deed to be immediate from the executor to him, he to give his own mortgage for the amount to remain required by the terms of sale; he also paying us the additional expenses of drawing the deed and mortgage to the executor, if he should charge any.

                                "Yours, &c.,
                                     "BELL & COE."

The broker submitted this note to the plaintiff, and then entered into a written agreement with him, in the defendant's name, for a sale of the lots, neglecting to include in the agreement the principal conditions mentioned in the above communication. The plaintiff paid on account of this contract, $200 to the broker, who gave the money to the defendant's clerk

without stating from whom he had received it. The clerk used it for the defendant's benefit; but when the latter discovered the facts, he sent to the plaintiff a check for the amount.

Before the defendant knew that the terms upon which the broker had contracted for him, varied from those which he had accepted in the letter, he went to the original vendor, told him that he had the plaintiff as a purchaser, and obtained an extension of time to investigate and complete his purchase. He also repeatedly urged the broker to obtain a description of the property covered by the mortgages which the plaintiff was to give; and his clerk (as it afterwards appeared, however, without his knowledge) wrote to the plaintiff upon the subject, speaking of "the contract as to the purchase of the lots, effected through Mr. F. A. Guion," the broker.

Afterwards, the plaintiff submitted to the defendant mortgages upon property already covered by prior incumbrances. These were returned, without a statement of any objections to them, and the defendant declined to have any further dealings with the plaintiff.

The lots in question were continually rising in value. The close of the original sale to the defendant was delayed for a considerable period. When it was completed, the plaintiff tendered a complete performance of his contract, and demanded a deed, which the defendant refused, without assigning reasons.

The case was tried before a referee, who reported for the defendant. From a judgment upon the report, the plaintiff appealed.

*Erastus C. Benedict* and *George Wood*, for the plaintiff.

I. This is a suit in equity for a specific performance of a contract for the sale of land.

Being commenced since the code, the rules of proceeding and evidence are according to the code, but the rules of law in relation to specific performance, and the rights of the par-

ties, are in no respect changed. It is still an equity suit, and the rights of the parties are to be ascertained and decided according to that system of law, heretofore and elsewhere administered in courts of equity.

II. The principle on which such suits rest, is that every man is bound to perform his contracts, no matter in what form, or with or without what solemnities they may be made. Equity takes hold of the substantial contract, and compels the party to perform it, unless it be unjust to do so. In the words of Lord Eldon: "A principle, beneficial, well known and established, is that equity does not permit the forms of law to be made instruments of injustice. When, therefore, advantage is taken of a circumstance that does not admit a strict performance of the contract, if the failure is not substantial, equity will interfere." (13 Vesey, 76; 2 Story's Eq. Jur. § 777; *Hall* v. *Warren*, 9 Vesey, 668.)

III. The defendant does not set up the statute of frauds in his answer, and in equity the statute is not a bar if it be not set up.

The object of the statute of frauds being to prevent the setting up pretended agreements, and then supporting them by perjury, courts of equity will enforce a specific performance of a contract, within the statute, not in writing, when it is set forth in the bill, and is confessed by the answer. (Story Eq. Jurisp. § 755.)

The plaintiff says, that the defendant agreed to sell and convey to the plaintiff the lots in question, for the sum of $6,500, payable as follows: $4,305 by a bond and mortgage at six per cent., half yearly, payable in three years, $1,750 in bonds and mortgages on city property, at seven per cent., and the balance in cash. The deed to be executed and the mortgages assigned, when satisfactory examinations of the title should be made.

The defendant says, that the plaintiff offered to purchase the lots for $6,500, give his bond and mortgage to Eckford's executors for $4,305, and assign certain bonds and mortgages for another portion, and pay the balance in cash; that the de-

fendant was disposed to sell the lots at the price offered as aforesaid; and on the offer being renewed, the defendant consented in substance that the plaintiff should take the lots at that price; that the defendant would accept the assignment of mortgages, with the difference in cash, if, on examination, the title was good.

If the defendant sets up or establishes a contract, differing somewhat in form or construction from that set up by the plaintiff, the court will not dismiss the bill, but enforce the contract, set up by the defendant, if the plaintiff desires it. (2 Story Eq. Jur. §§ 777, 779, 780; *Fife* v. *Clayton*, 13 Vesey, 546; *Spurrier* v. *Fitzgerald*, 6 Vesey, 553.)

The proposition of the plaintiff, the letter of instructions, and the contract as made, all show the same agreement, in all substantial particulars.

The statute requires not "a contract" in writing, but only "*some note* or *memorandum* of the contract expressing the consideration." The letter of instructions and the agreement are sufficient memorandums within the statute. The contract is complete. (*Fowle* v. *Freeman*, 9 Vesey, 351; *Coles* v. *Trecothick*, Ibid. 234, 249.)

IV. This is a case of the clearest equity in favor of the plaintiff.

The negotiation was continued for some time—was open and understood by parties and agents. The price was mentioned in the offer of the plaintiff; it gave the defendant a large profit, and took the transaction, with all its contingencies and risks, entirely off the defendant's hands. The plaintiff never asked indulgence or favor or delay, and never intimated any unwillingness to complete, and as soon as the difficulties in the way of closing the matter were removed by the Eckford party, he sought the defendant, and with money enough and mortgages enough to meet all possible objections, he offered to complete by cash or mortgage. No portion of his conduct is in any respect liable to just criticism, in matter of substance or of form.

The contract which we seek to enforce, is a contract which

the defendant offered to make—supposed was made—insists was made—and for near a month offered and urged the fulfillment of—was profitable to him and very desirable, till the lots rose in value.

V. On the other hand, the grounds on which performance is resisted, are insufficient. They are technical, narrow and inequitable, so far as they exist in the case. Most of them do not arise in the case. They are excluded by the defendant's repudiating the contract, and by the plaintiff's tender of performance.

The question of *time* is of no importance. Time is not the essence of the contract, except in very stringent and peculiar circumstances. (11 Paige, 352, 359; 14 Pet. Rep. 172; Story Eq. Jur. §§ 747, 748, 776; 1 Younge and Collyer, 415; 2 Sch. and Lef. 684.)

That the mortgages were *not in existence*, is of no moment. They could be made when wanted. That they were *second mortgages* is of no moment. That they were *not recorded* was of no moment. The character and circumstances of the mortgages were entirely immaterial. The defendant should have demanded better ones, and not have repudiated the contract. Prior incumbrances, defects of title, no title at all, constitute no objection in questions of specific performance. Property is so universally incumbered, that the court always allows the vendor to remove incumbrances, and make the title what he agreed it should be, even after suit brought and hearing. (3 Sandford's Ch. Rep. 77.)

VI. On and after the 24th of March, the defendant uniformly and peremptorily, and without assigning any reason, "declined making any sale of the lots, or having any thing to do with them;" "repudiated and denied the validity of the agreement;" and "refused any and all compliance with any contract theretofore made, or understood to have been made, with said plaintiff as to the purchase of said lots, authorized or unauthorized." From that time any tender or offer to perform on the part of the plaintiff was unnecessary. He was placed on the broadest equitable grounds.

VII. The plaintiff, however, put himself right beyond question, and offered the defendant the fullest equity by making two formal tenders on the 2d June, 1848, and demanding a deed.

VIII. At law, where the rules in relation to tender are strict, and *a fortiori* in equity, it is well established, that the right to a tender may be waived by acts and declarations showing that the party does not desire or will not accept a tender, "a party is not bound to do a nugatory act." (*Douglas*, 684.)

A legal tender must be made in *coin;* yet bank bills, uncurrent bank bills, are good, if not objected to; all the legal formalities are unnecessary, unless they are made the ground of objection. In the language of Judge Livingston, 3 John. Ca. 250: "Silence will give effect to an act otherwise doubtful; the tender is good, there being no objection made as to the want of the requisite formalities." (*Judah* v. *Kemp*, 2 John. Cases, 411; *Coit* v. *Horton*, 3 John. Cases, 250; *Slingerland* v. *Morse*, 8 John. Rep. 372; *Warren* v. *Maine*, 7 John. Rep. 476; *Wallis* v. *Slyn*, 19 Vesey, 381.)

"And a tender and refusal is equivalent to performance." "It is a principle settled, that when a person is to acquire a right to a debt or duty by previously doing some act, this right is as completely vested by an offer to do it, and a refusal, as if the act had been actually performed." (3 John. Cases, 251; 10 Wend. 374; 13 Wend. 95.)

IX. The defendant was bound to state his objections to the mortgages and to the tender, that they might be removed. The defendant probably did not desire to have them removed, or he would have specified them.

Although, if there should be a decree for specific performance, and the same mortgages should be again offered, the defendant might still make any valid objections to them, yet for the purposes of this agreement, for the purposes of a tender, for all the purposes of a specific performance, the defendant's omission to state any objections is a waiver of all objections to the mortgages, and the character of the mortgages cannot be

made a question.    They must be assumed to be first mortgages on good city property.

X. The only question is, whether Mr. Guion was authorized to sell the lots to the plaintiff.    Mr. Guion had authority.    His original authority connected with his interest in the profits, gave him power to sell.

The whole drift of the letter from the defendant to him, shows that it was intended Guion should make a written agreement.    The details in the letter were merely cautionary or suggestive, otherwise the letter would have been, *send Mr. Roach to us and we will close with him.    (Fowle* v. *Freeman,* 9 Ves. 351; *Coles* v. *Trecothick,* Ibid. 235.)

XI. Mr. Guion's acts being authorized, needed no justification.    The defendant's acts of ratification are, however, significant, as throwing light back upon the question of Guion's authority to sell the lots.

*Edward Sandford,* for the defendant.

I. The decision of the referee as to the questions of fact arising on the trial of the cause before him, is conclusive, so far as regards this appeal, and cannot be now reviewed.    (Amended Code, § 348.    *Lusk* v. *Lusk,* 4 How. Prac. Rep. 418, Supreme Ct.; *Leggett* v. *Mott,* 4 How. Prac. Rep. 325, Superior Ct., overruling *Pepper* v. *Goulding,* 4 How. Prac. Rep. 310; *Graham* v. *Milliman,* 4 How. Prac. Rep. 435; *Hastings* v. *McKinley,* 3 vol. Code Rep. page 10.)

II. The decision of the referee in his report, "that the plaintiff was not entitled to any damages as claimed in the complaint," was correct in law, and the exception of the plaintiff thereto was not well taken.

(*a.*) There was no evidence of fraud as to the defendant's refusal to convey, and fraud cannot be inferred.    The finding of the referee as to the absence of fraud is conclusive, and in the absence of fraud, the consideration money paid is the only measure of damages.    (*Blanchard* v. *Ely,* 21 Wend. 342, and

cases there cited; *Dominick* v. *Lockwood*, 10 Wend. 150;
*Peters* v. *McKeon*, 4 Denio, 550.)

(*b.*) The consideration money paid by the plaintiff had been
tendered back to him by defendant before suit brought, and he
was offered then all he could legally claim in this action.
(Same cases.)

(*c.*) The action is for the " specific performance of an alleged
contract to convey land," and the plaintiff cannot unite a claim
for damages in the same action where a decree for specific per-
formance is demanded, nor did the referee err in refusing to
award damages, when it appeared by the evidence that a
specific performance *could be made* by the defendant.

The claim for specific performance previous to the code
would be an action in equity, and the claim for damages an ac-
tion on the case at law, for damages for breach of contract.

The code has not provided for the union in the same action
of these different claims for redress, nor in this altered the
principles which govern actions, even if it has changed their
forms.   (Amend. Code, § 129, sub. 1 and 2; *Crary* v. *Smith*,
2 Coms. page 60; *McMaster* v. *Booth*, 4 How. Prac. Rep.
427; *Myers* v. *Raslach*, 4 Id. 83; *Shaw* v. *Jayne*, 4 Id. 119;
*Spalding* v. *Spalding*, 3 How. Spe. Term Rep. 397; *Leopold*
v. *Poppenheim*, 1 Code Rep. 39; *Hill* v. *McCarthy*, 3 Code
Rep. 50; *Knowles* v. *McGee*, 3 Id. 31.)

III. The decision of the referee in his report, " that the
defendant was not bound to convey to the plaintiff the land
mentioned in the complaint, or specifically *to perform the
agreement therein set up*," was correct in law, and the exception
of the plaintiff thereto was not well taken.

(*a.*) The finding of the referee, that Guion possessed no au-
thority from the defendant to bind him upon the evidence
before him, is conclusive, and cannot in this appeal be re-
viewed.   (See cases cited under 1st point.)

(*b.*) Specific performance of any agreement other than the
agreement set up in the complaint, could not have been
decreed by the referee in this cause.

(*c.*) But the agreement is a " conveyance" and not a " con-

tract to convey," and Guion was not an agent "thereunto *specifically* authorized in writing" to make this conveyance in the name of defendant. (See pleadings agreement: "I have this day sold;" "I have this day purchased." 2 ed. Rev. St. 2d vol. page 69, §§ 6, 8, 9; *M'Whorter* v. *McMahon*, 10 Paige, 386.)

The defendant was not obliged to plead the statute of frauds in the answer to avail himself of it, both *because* the complaint does not unfold the fact that the agreement was *void by* the statute of frauds, which does not appear until the proofs, and *because* a court of equity cannot disregard *that* statute even where the defendant neglects to plead it in his defence. (3 A. K. Marshall, 445; *Champlin* v. *Parish*, 11 Paige, 405.)

(*d.*) If the agreement is deemed an "executory contract," then Guion was not lawfully authorized to subscribe the name of the defendant thereto, within §§ 8 and 9 of the statute of frauds, and the same was therefore void. (2 ed. Rev. St. page 69, vol. 2, §§ 8 and 9; 10 Paige, 394.) "It must appear in evidence that the person signing as agent was lawfully authorized *to sign it*, as such agent." (3 Pet. Rep. 413; 9 Peters, 607.) 1st. Because his authority was limited " to receiving and submitting offers," and this did not lawfully authorize him to subscribe the name of the party, within the §§ 8 and 9 of the statute of frauds. 2d. Authority to Guion *to sell* the lots, (though none such was given,) conferred no authority within the meaning of the statute, to subscribe the name of the defendant to an *executory contract*, to convey at a future day. (2 R. S. 2d ed. page 69, § 9.) *Circuit Court, Coleman* v. *Secor*— Before Justice Edwards. The broker testified " he was authorized to sell and close the bargain;" held not sufficient to authorize him *to sign the name* of the party to an *executory contract*, to sell at a future day. (*Delafield* v. *State of Illinois*, 26 Wen. 221; *Rossiter* v. *Rossiter*, C. J. Savages' opinion, 8 Wend. 494; Dunlap's Paley on Agency, page 279; Theobald on Agency, pages 262, 294; 18 John. Rep. 366; 15 John. Rep. 44; 5 Yer. 71; 7 Yer. 505; 1 Watts & Serg. 328; Walker, 149; 7 Ms. 419; 9 Port. 210; 1 Wash. C. C. 174.) 3d. Guion's *only*

*authority* was contained in the letter of instructions, and even if the plaintiff was ignorant of that letter, the defendant was not bound by any contract made beyond it. Guion was but a *special agent.* (Com. on Con. 216, 5 Am. ed. ; *Jackson* v. *Hunt-ley*, 5 John. Rep. 58 ; *Jackson* v. *Halloway*, 7 Id. 394 ; *Andrews* v. *Kneeland*, 6 Cow. Rep. 354 ; 6 Monroe, 577 ; 6 Pick. 202.) 4th. But the plaintiff was fully aware of the contents of the letter, and of the limitation of Guion's authority ; and even if Guion had been the defendant's general agent, the contract drawn differing from that letter, would not have bound the defendant. (*Stains* v. *Tyson*, 3 Hill Rep. 279 ; *Delafield* v. *Illinois*, 26 Wend. pp. 222, 223 ; *North River Bank* v. *Aymar*, 3 Hill, 263 ; Ware, 175 ; 6 Munroe, 577 ; *Sanford* v. *Handy*, (overruled on another point, but not as to this,) 23 Wend. 260 ; *Horton* v. *Towns*, 6 Leigh ; 4 Cow. 417 ; 6 Pick. 202.) 5th. The agreement is *a gross departure* from the letter of instructions. This will be seen from a comparison. 6th. Even ratification by parol, after full knowledge, will not bind the defendant in case the agreement is a conveyance *in presenti* within § 6 of the statute of frauds. The ratification must be in writing. (*Blood* v. *Goodrich*, 9 Wend. p. 78.) 7th. Even if Guion was a partner of the defendant, then his sale of these lands cannot bind defendant. (1.) Because he is alleged to have acted as the agent of defendant in the complaint, and the issue was as to this. (*Kelsey* v. *Western*, 2 Com. Rep. 506, 507.) (2.) Because if a partner, he was but a tenant in common, and only can bind his own interest in the land. (*Coles* v. *Coles*, 15 John. 159 ; *Sherman* v. *Balean*, 8 Cow. Rep. 304 ; *Blood* v. *Goodrich*, 9 Wend. 77.) (3.) There can be no partnership as to a dealing in lands, and the rules of law applicable to commercial co-partnership do not apply. (*Pitts* v. *Waugh*, 4 Mass. 464.) 8th. But if the agreement is deemed *executory*, evidence of ratification must be full, clear, certain and positive, after full knowledge of the agreement ; and ratification of the letter, and of any supposed proceedings in accordance with it, is not a ratification of the agreement to bind the defendant. (*Owen* v. *Hull*, 9 Peters, 607 ; 26 Wend. 227 ; 6

Leigh, 58; 22 Wend. 342; 3 Maule & Selwyn, 562; 10 East, 392; 2 Smedes & Marsh. 193; *Paige* v. *Stone*, 10 Metcalf, 160; 6 Pick. 203.)   9th. Guion being the plaintiff's agent before he became the defendant's, and the plaintiff knowing that Guion was acting, in the making of the agreement for him, and the defendant ignorant of these facts, equity will refuse to enforce such an agreement *upon this ground alone.* (2 Ed. Ch. Rep. 18; Story, § 211; *Copeland* v. *Ins. Co.* 6 Pick. 204; Dunlap's Paley, p. 33, text and notes; 1 Livermore's Prin. & Agent, 425; 1 Mason, 341; 2 Mason, 369.)

(*e.*) Even if Guion was lawfully authorized to execute the agreement, the agreement, either apart from or in connection with the letter of instructions, was void *through uncertainty*, and the referee could not decree specific performance thereof.

(*f.*) The construction of agreements is the same in courts of equity as at law.   Neither court can take any liberty with the contract which the parties have made, nor can they make contracts which the parties did not make.   The plaintiff must show affirmatively that he has done every thing in his power, and that there has been no willful neglect or misconduct on his part. (*Eaton* v. *Lyon*, 3 Ves. 690, 692; *Marshall* v. *Craig*, 1 Bibb, 394; 3 Bl. Com. 432, 434; *Gough* v. *The Worcester and Birmingham Canal Company*, 6 Ves. 353, 362; *Bracebridge* v. *Buckley*, 2 Price, 200; *Rolfe* v. *Harris*, Id. 206, note.)

(*g.*) But the plaintiff has never performed or offered to perform his part of the agreement, nor of the alleged contract created by the letters of instruction.   He was never prepared to fulfill his part, and his proceedings to create mortgages, and the offer of them, was in no sense a compliance. (*King* v. *Hamilton*, 4 Peters, 326; *Cathcart* v. *Robinson*, 5 Peters' R. 604; *Coulson* v. *Thompson*, 2 Wheaton R. 36; 4 John. C. R. 559.)

(*h.*) The agreement was concocted in fraud, and the court will refuse to aid in its performance, even when there is a suspicion of fraud. (6 John. C. R. 111, 117, 222; 3 Hill, 282.)

BY THE COURT. INGRAHAM, FIRST J.—This action is brought to compel a specific performance of a contract for the sale of lots in Twenty second street, in the city of New York. The contract was made by Guion, a land broker, in the name of the defendants.

Upon the hearing before the referee, the defendant relied upon the same grounds as are now set up to sustain the report of the referee. 1st. That there was no authority on the part of Guion to make the contract, and that the contract was not ratified afterwards. 2d. That the contract was void by the statute of frauds. 3d. That the plaintiff has not by performance on his part entitled himself to the relief demanded.

Whether or not there was authority on the part of Guion, the broker, to execute the contract, and whether it was subsequently ratified or not by the defendant, are questions of fact within the province of the referee to decide. As his report is general, 'we are unable to say whether his decision was upon this ground or the others which were raised in the cause.

Upon the testimony, however, I think there can be no difficulty as to this question.

The authority relied on to authorize the making of the sale and contract was of a limited character. Defendant consented to sell to the plaintiff the lots of land upon certain conditions, namely, he to assign the bonds and mortgages, and to pay the balance in cash on that day, and if, upon investigation of the title of the mortgaged premises, they were free from incumbrance, then the defendant was to execute an agreement with the plaintiff to let him take the lots. Other conditions were annexed in regard to the substitution of the purchaser in place of defendant as the purchaser from Eckford's executors, &c.

Under this letter, if it had been accepted by the plaintiff by endorsement thereon, no claim could exist on his part until he had complied with its terms, viz., to assign the bonds and mortgages, to pay the money at the time, and to allow an investigation for the purpose of ascertaining that the title of the property mortgaged was good, and the property free from prior incumbrance. After that was done, the purchaser was entitled to an agreement to let him take the lots.

This I understand to mean that the defendant would assign to him his purchase from Eckford's executors, or let him take the lots from them, he substituting himself as a purchaser. If this is the proper construction of this letter, then it certainly contained no authority to Guion to make the contract which he entered into with the plaintiff.

It gave him no authority to sell absolutely, or even to sell at all, but merely to communicate the decision of Bell & Coe on the offer. It gave no authority to sign a contract, and the contract as signed varied materially the terms on which Bell & Coe were willing to sell, viz.: it did not require the mortgages to be on unincumbered property; it did not make the investigation of the title with a satisfactory result a preliminary to making the agreement; it did not require the cash payment to be made on the day of the contract, but only $200 of it, and it did not require the purchaser to take his title from the executors.

I think, therefore, that Guion had no authority to make the contract for the sale, and if he had any such authority, that in executing the power, he departed so far from the terms as to render the contract nugatory.

But it is said, that even admitting that Guion had no authority to make the contract to bind the defendant, still he, by his acts, subsequently ratified it, and therefore was bound to perform it.

The payment of $200 upon it does not appear to have come to the knowledge of the defendant in such a way as to be considered a ratification. The evidence shows that Guion was in the habit of procuring money for Coe, and paying it to his clerk; that the $200 received by Guion was paid to the clerk without informing him upon what account such money was paid, and that as soon as Coe received the information, he drew a check for the amount and returned it to Guion, to be repaid to the plaintiff. Guion also testifies that he never informed Coe of the existence of the contracts for sale until the 24th March, 1848.

It was urged as an evidence of ratification by Coe, that he

acted on the supposition that there was a contract of some kind, that he sent for the mortgages, that he received the money, that he acknowledged the contract in his letter of 20th March, and that he acted upon a contract made by Guion after it was made.

The letter of the 20th March is shown to have been written by the clerk without the knowledge of the defendant as to its contents. The receipt of the money was by the clerk, without the knowledge of the principal, and the other acts relied upon are not at all inconsistent with the supposition on the part of the defendant, that a mere verbal agreement had been made by Guion pursuant to the terms of his letter, and although not complied with so far as the payment of the money was a condition, yet as he had extended the time of payment of moneys to be paid to the executors of Eckford, that he was also willing to extend the time of payment by the purchaser, if in other respects the conditions were performed. To hold a party to the ratification of a contract made by a person who had no authority to make it, there should be evidence to establish satisfactorily that the party, at the time of such ratification, had full knowledge of what the contract was, and also that the acts from which such ratification is to be inferred, were intended by the party to relate to the performance of such contract. But to hold that the receipt of money by mistake or without knowledge of its being paid on account of the contract, or that acts done under the supposition that the contract was different from what it really was, would be sufficient to ratify a contract which had never been disclosed to the party so charged with it, would be neither safe nor just.

It appears to me that the finding in the defendant's favor, on both points, as to the authority of the agent to make the sale, and as to the subsequent ratification by the defendant, would be consistent with the evidence, and ought to be sustained.

This view of the case renders it unnecessary to examine the other questions raised on the argument as to the statute of frauds, or as to the performance by the plaintiff on his part.

In regard to the latter point, it is apparent that he never has performed what the contract required of him. And Guion, to whom the plaintiff committed the settlement of the matter, on his part, says that the plaintiff never was ready, to his knowledge, to comply with the conditions of the letter. All that he ever did by way of performance, was to pay $200 in cash, and to offer bonds and mortgages of little or no value, because there were prior incumbrances on the property, when it was expressly required that the mortgages should be on property unincumbered. It is difficult to find in such proceedings any thing like a *bona fide* attempt or intention fairly to perform the contract as entered into between the plaintiff and Guion, even laying out of view entirely the want of authority on the part of Guion to execute it.

It was not necessary for Coe to give any reasons for rejecting the mortgages, if as soon as he became acquainted with the terms of the contract, he intended to repudiate it, and so notified the plaintiff. Guion testified that he first informed Coe of this agreement on the same day on which he returned the mortgages, and refused to receive them.

My conclusions are in favor of the report of the referee upon the facts before him, and as there is no error of law upon which his finding should be interfered with, the judgment should be confirmed.

Judgment affirmed.